Forst, J.,
dissenting.
I respectfully dissent. There are not many court opinions addressing a warrant-less search of the “black box” event data recorder (“EDR”) attached to an individual’s motor vehicle.[5] An opinion by a “Justice Court” in New York (similar to a circuit court in Florida)[6] and an appellate court in California[7] appear to be the only published precedent addressing the instant matter. Obviously, searches of EDRs in motor vehicles were not on the minds of the first United States Congress when the Fourth Amendment was introduced in 1789, and the United States Constitution’s right to privacy sheds no light on the subject (particularly since there is no provision actually describing such a right to privacy).[8]
*609 Thus, there is no definitive answer to the question posed in this case—whether the warrantless search of Appellee’s car’s EDR constituted a violation of his Fourth Amendment protection against unreasonable searches. Nonetheless, contrary to the well-reasoned majority opinion, I conclude that the “search” of the EDR attached to Appellee’s vehicle was not a search or seizure protected by the Fourth Amendment, as Appellee did not have a reasonable expectation of privacy with respect to the data in this particular EDR.
Background
The relevant facts are set forth in the majority opinion.
Analysis
As noted in the majority opinion, “[a] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable.” State v. Lampley, 817 So.2d 989, 990 (Fla. 4th DCA 2002) (quoting Kyllo v. United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)). The reverse is also true: “a Fourth Amendment search does not occur ... unless ‘the individual manifested a subjective expectation' of privacy in the object of the challenged search,’ and ‘society [is] willing to recognize that expectation as reasonable.’ ” Id, at 991 (alterations in original) (quoting Kyllo, 533 U.S. at 33, 121 S.Ct. 2038).
In contrast to a cellular phone, an EDR does not contain ‘⅛ broad array of private information” such as photos, passwords, and other “sensitive records previously found in the home.” Riley v. California, — U.S. —, 134 S.Ct. 2473, 2491, 189 L.Ed.2d 430 (2014). Significantly, the EDR in the instant case did not contain GPS information relative to the vehicle’s travels, which may be subject to privacy protection. See United States v. Jones, 565 U.S. 400, 415-17, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) (Sotomayor, J., concurring) (expressing concern with GPS information which “reflects a wealth of detail about [a person’s] familial, political, professional, religious, and. sexual associations”). As noted in the majority opinion, the EDR in this case was only recording speed and braking data,- the car’s change in velocity, steering input, yaw rate,[9] angular rate, safety belt status, system voltage, and airbag warning lamp information. Moreover, this data had not been knowingly inputted by Appellee; in fact, it is likely that Appel-lee did not even know that the vehicle he was driving had an EDR, Therefore, it would be quite a stretch to conclude that Appellee sought to preserve this information as “private.”
The majority opinion references the United States Supreme Court’s Riley decision as well as this Court’s recent opinion in State v. K.C., 207 So.3d 951 (Fla. 4th DCA 2016). Both cases involved cell phones. As distinguished from an EDR attached to an undercarriage of a motor vehicle, cell 'phones are usually carried close to an individual’s body, generally in a pants or shirt pocket or in a purse or belt case. The database of the EDR in this case carries extremely non-private, non-confidential information, such as the vehicle’s yaw rate; a cell phone, on the other hand, “collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record.” Riley, 134 S.Ct. at 2489. *610 A reasonably prudent seller of his/her used cellphone or personal computer would clear the hard drive of all personal information;. the seller of a used vehicle would be unlikely to take similar action with, respect to the vehicle’s EDR.
In our KG. opinion, we emphasized that, though abandoned by the phone’s owner, “[the] contents [of the cell phone] were still protected by a password, clearly indicating an intention to protect the privacy of all of the digital material on the cell phone or'able to be accessed by it.” K.C., 207 So.3d at 955. The private data in a cell phone is, for the most part, created by the owner and is password protected by the owner for his/her own benefit and privacy,’ The data on the EDR, however, was not' created by the owner and was not protected by a password by or for the benefit of the owner (even though there apparently was a password-like encryption on the data). This data is collected and stored in the interest of public safety, including the safety of the vehicle’s driver.
In the aforementioned New York Cfmst-mann decision which involved a prosecution for speeding and failing to • exercise due care, the court held that the motorist had only a diminished expectation of privacy following an accident with respect to the vehicle’s mechanical areas, and therefore retrieval by law enforcement of data stored to the vehicle’s SDM did not constitute an unreasonable search and seizure. Christmann, 776 N.Y.S.2d at 441-42; see also People v. Quackenbush, 88 N.Y.2d 534, 647 N.Y.S.2d 150, 670 N.E.2d 434, 439-40 (1996) (similar, and specifically referring to the diminished expectation of privacy yielding to the overwhelming state interest in investigating fatal accidents).
The California case of Diaz involved -a situation similar to the instant case. Diaz, 153 Cal.Rptr.3d 90, There was a motor vehicle accident and,, as part of their investigation, law enforcement personnel, without a warrant, downloaded the SDM. Id. at 96. The California Court of Appeal affirmed the trial court’s ruling that there was no reasonable expectation of privacy with respect to' the data in the SDM, finding the defendant failed to demonstrate “a subjective expectation of privacy in the SDM’s recordéd data because she was driving on the public roadway, and others could observe- her vehicle’s movements, braking, and speed, either directly or through the usd of technology such as radar guns or automated cameras.” Id. at 102. “[Technology merely captured information defendant knowingly exposed to the public—the speed at which she was travelling and whether she applied her brakes before the impact.” Id.
The majority opinion discounts the reasoning in Diaz, finding it neither “persuasive [n]or controlling.” Certainly, it is not controlling. However, it is persuasive, as the trial court’s decision denying the defendant’s motion to suppress, quoted in the District Court’s opinion, is particularly, logical:
“Assuming the defendant had such knowledge [that there was.an SDM.-in the car] and also had an expectation- of privacy, it does not seem that such expectation would be reasonable. These computer modules were placed in cars as safety devices to gather information such as braking and speed, so as to be able to deploy the air bag at an appropriate time. They were not designed, to gather any personal information nor designed or developed by the government to gather incrimination evidence from a driver. One cannot record communication of any kind on them. Indeed, they are not under the control of .the individual driver at all.”
The trial court further held: “[Defendant] had no reasonable expectation of *611 privacy in her speed on a public roadway or when and if she applied her brakes shortly before the crash. If a witness, observed those actions and testified to them, the evidence would be admitted. If an expert in accident reconstruction tes-tilled to them, that evidence would' be admitted. There is no difference in an electronic witness whose memory is much more accurately preserved, both to exonerate and implicate defendants.”
Id. at 97.
The majority opinion maintains that Diaz inappropriately relied on Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), and implies that Jones is the operative Supreme Court precedent for this issue. Actually, the Diaz opinion discusses Jones at some length, noting that the Supreme Court decision was based “on the common law theory of trespass in placing the GPS on the defendant’s personal property, combined with the, police attempt to obtain information,” and the “trespass theory underlying Jones has no relevance [in this SDM search case] and, as the trial court aptly pointed out, the purpose of the SDM was not to obtain information for the police.” Diaz, 153 Cal.Rptr.3d at 101. The majority in the instant case suggests that the Jones opinion’s reliance on this trespass theory when it could have relied on the Smith theory means that Smith is no longer binding precedent. But the fact that the Supreme Court chose to resolve Jones on the narrower trespass grounds rather than to wade into the waters of voluntary conveyance of information from Smith means only that trespass is a viable Fourth Amendment consider ation, not that trespass is the only consid-. eration remaining.
Furthermore, in Jones, the government placed a GPS tracking device on the defendant’s car to monitor the vehicle’s movement and location. Jones, 565 U.S. at 403, 132 S.Ct. 945. By contrast, an EDR is installed on vehicles before they are sold/ leased to a driver and the purpose is not to track the. vehicle’s location or route. Moreover, although -the EDR is placed under the vehicle and most vehicle owners and drivers are unaware that there is such a black box attached to the vehicle, there is no attempt on the part of the government to secretively attach the EDR and have it record this information. Unlike the situation in Jones, the attachment of the .EDR is not directed-at any individual; as noted in the majority opinion, “Approximately 96% of cars manufactured since 2013 are equipped' with event data recorders” and they are installed prior to the conveyance of the vehicle to any individual.
Finally, I take issue, with the majority opinion’s holding that the Driver .Privacy Act of 2015 “enhances’ the notion that there is an expectation of privacy in information contained in an automobile data recorder.” What actually happened is that Congress took note that most vehicles were being sold with EDRs installed by the manufacturer; it determined that the data collected may be sensitive and/or private but not to the extent that extraction of this data by the government would be limited by the Constitution; and it thus chose to fill the void, just as seventeen state legislatures had previously done. Filling the void, where authorized by the Constitution, is a power properly delegated to the legislature, not thé judiciary. '
Conclusion
The data that the government extracted from the vehicle that was owned and driven by Appellee in this case was not information for which Appellee or any other owner/driver had a reasonable expectation of privacy. The data was not personal to Appellee, was not password.protected by Appellee, and was not being collected and maintained solely for the benefit of Appel- *612 lee. The EDR was installed by the vehicle’s manufacturer at the behest of the National Highway Traffic Safety Administration and, as distinct from Jones, the purpose of the data collection is highway and driver safety. See New York v. Class, 475 U.S. 106, 113, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (“[A]utomobiles are justifiably the subject of pervasive regulation by the State [and ejvery operator of a motor vehicle must expect the State, in enforcing its regulations, will intrude to some extent upon that operator’s privacy.”).
Accordingly, as the extraction of data from the vehicle’s EDR in the instant case was not a search or seizure protected by the Fourth Amendment, I would reverse the trial court’s suppression of this evidence. Thus, I respectfully dissent.

. In General Motors vehicles, the EDR is also referred to as the "Sensing Diagnostic Module (SDM).” People v. Diaz, 213 Cal.App.4th 743, 153 Cal.Rptr.3d 90, 92 n.2 (2013); People v. Christmann, 3 Misc.3d 309, 776 N.Y.S.2d 437, 438 (Just. Ct. 2004). "The SDM ... has multiple functions; (1) it determines if a severe enough impact has occurred to warrant deployment of the air bag; (2) it monitors the air bag’s components; and (3) it permanently records information.” Bachman v. Gen. Motors Corp., 332 Ill.App.3d 760, 267 Ill.Dec. 125, 776 N.E.2d 262, 271-72 (2002).

. Christmann, 776 N.Y.S.2d 437.

. Diaz, 153 Cal.Rptr.3d 90. Diaz is discussed in this opinion. Another California appellate court decision, People v. Xinos, 192 Cal.App.4th 637, 121 Cal.Rptr.3d 496 (Ct. App. 2011), which held that the downloading of data from the vehicle's EDR following an accident violated the driver’s Fourth Amendment rights, is not discussed as it predates Diaz and was ordered not to be officially published. Id. at 507-12.

.Appellee does not rely upon the Florida Constitution’s Right of Privacy, Article I, Section 23, Further, that provision yields to Article I, Section 12 with respect to "searches and seizures,” with the Florida Constitutional right "construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.”

. "A yaw rotation is a movement around the yaw axis of a rigid body that changes the direction it is pointing, to the left or right of its direction of motion. The yaw rate or yaw velocity of a car, aircraft, projectile or other rigid body is the angular velocity of this rotation ...Yaw (rotation), Wikipedia (Mar. 13, 2017, 2:37 PM), https://en.wikipedia.org/wiki/ Yaw_(rotation) (emphasis omitted). Yes, I also didn’t know what this was.